**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

KATHRYN A. KOZUSZEK,

          Plaintiff,

          v.

COUNTY OF PORTER, INDIANA;
PORTER COUNTY ELECTION BOARD;
KAREN MARTIN, individually; JESSICA
BAILEY, in her capacity as Porter County
Clerk and a member of the Porter County
Election Board; and DAVID BENGS,
individually and in his capacity as a member
of the Porter County Election Board,

          Defendants.

CAUSE NO.: 2:18-CV-446-TLS-JEM

### OPINION AND ORDER

This case arises out of Plaintiff Kathryn A. Kozuszek's employment in the Porter County
Voter Registration Office, the alleged denial of her overtime pay in violation of the Fair Labor
Standards Act, and the reassignment of Plaintiff's election-related duties to the Office of the
Porter County Clerk in retaliation for her speech regarding overtime pay in violation of the First
Amendment. Before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Amended
Complaint [ECF No. 32]. Because Plaintiff has plausibly alleged that the speech that motivated
Defendants' alleged retaliatory actions addressed a matter of public concern, the motion is
denied.

### BACKGROUND

Plaintiff Kathryn A. Kozuszek filed a Complaint [ECF No. 1] on November 27, 2018,
and an Amended Complaint [ECF No. 24] on March 26, 2019, alleging two legal claims against
Defendants County of Porter, Indiana; Porter County Election Board; Karen Martin,

individually; Jessica Bailey, in her capacity as Porter County Clerk and a member of the Porter County Election Board; and David Bengs, individually and as a member of the Porter County Election Board. First, Plaintiff brings a claim under 42 U.S.C. § 1983, alleging that the Defendants' retaliatory actions violated the First and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 2, 8, 18. Second, Plaintiff alleges that she was denied overtime pay in violation of the Fair Labor Standards Act (FLSA). *Id.* ¶ 19.

The following factual allegations are taken from the Second Amended Complaint. Plaintiff is a resident of Porter County, Indiana. ¶ 4. For nearly eighteen years she has been employed full-time in the Porter County Voter Registration Office ("Voter Registration") as the appointee of the local Democratic party. *Id.* For years, Voter Registration staff members, including Plaintiff, administered/conducted elections in Porter County, which usually resulted in Plaintiff working overtime in election years. *Id.* ¶ 9. Prior to October 2016, Plaintiff was designated as a "non-exempt" employee and received overtime pay when she worked in excess of 40 hours per week. *Id.* ¶ 10. Since October 1, 2016, Plaintiff has been treated as an "exempt" employee and denied overtime pay for hours in excess of 40 per week. *Id.* Porter County's decision to treat Plaintiff as an "exempt" employee and deny her overtime pay was not the result of any change in Plaintiff's duties but an attempt to save money. *Id.* ¶¶ 10, 11.

Plaintiff raised the issue of overtime pay with County officials. *Id.* ¶ 11. As a result, the overtime issue was debated in several public meetings of the Porter County Council held in August through November 2016. *Id.* ¶ 11. These discussions referenced County policy, the need for better policies, the legality of denying Plaintiff and her co-worker overtime pay in light of the FLSA, the number of County employees treated as exempt, the role of job descriptions, and how it would be "cheaper if we don't have to pay them overtime." *Id.*

2

On February 12, 2018, Plaintiff, through her attorney and in an attempt to resolve the overtime issue, sent a letter to attorneys representing Porter County and the Porter County Council, notifying them of the FLSA violation. *Id.* ¶ 12; *see also* Feb. 12, 2018 Letter, Defs.' Br. Ex. A, ECF No. 33-1 (erroneously dated February 12, 2017).[1] The letter opens with the statement that Plaintiff "claims she has not been paid for the overtime she worked in October – December 2016." *Id.* ¶ 1. The paragraph further provides: "It appears the decision to end payment for overtime, to [Plaintiff] and her Republican counterpart, Ms. Schoon, was made by members of the [Porter County Council] at a meeting on September 27, 2016." *Id.* The letter references the minutes of the public Porter County Council meetings in August, September, and October 2016, providing details of the discussion regarding the criteria for determining exempt status under the FLSA. *Id.* ¶¶ 2–4. These details include the Council's understanding of the legal requirements of the FLSA, the Council's diligence in understanding the requirements as to Plaintiff, and the discussions regarding which status would be "cheaper" for the county. *Id.* ¶ 3–4. The attorney concludes the letter, "My purpose in writing is to learn whether I am missing something, and ask whether the County is interested in attempting to resolve this without litigation." *Id.* ¶ 6. The effort to resolve the overtime issue was unsuccessful. Am. Compl. ¶ 12.

On March 8, 2018, the Porter County Election Board ("Election Board"), with encouragement from the members of the Porter County Council, voted to transfer the election-related duties from Voter Registration staff, including Plaintiff, to the office of the Porter County Clerk. *Id.* ¶ 13. The Election Board's vote was 2-1 in favor of transfer, with Defendant Porter County Clerk Karen Martin and Defendant David Bengs voting in favor of the transfer. *Id.* The

---

[1] Although not attached to the Amended Complaint, the February 12, 2018 and March 13, 2018 letters are referred to in the Amended Complaint and are central to Plaintiff's claims; therefore, the Court may consider the letters on the instant Rule 12(b)(6) motion to dismiss. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

democratic appointee to the Election Board voted against the transfer, stating he believes the action was taken in retaliation for Plaintiff's demand for overtime pay. *Id.* Plaintiff alleges that this vote was in retaliation for the February 12, 2018 letter. *Id.*

On March 13, 2018, Plaintiff's attorney sent a second letter to attorneys representing Porter County and the Porter County Council, alleging a violation of the FLSA. *Id.* ¶ 12; *see also* Feb. 12, 2018 Letter, Defs.' Br. Ex. B, ECF No. 33-2. Still, the effort to resolve the overtime issue was unsuccessful. Am. Compl. ¶ 12.

The November 2018 election in Porter County was a "well-publicized embarrassment, with several Porter County officials attributing the mismanagement of the election to defendant Martin and her lack of experience in conducting an election. In fact, several County officials called for Martin's immediate resignation." *Id.* ¶ 14. In an effort to mitigate the failures of Defendant Martin, Plaintiff worked several hours of overtime during November 2018. *Id.* ¶ 15.

Porter County officials, working with state legislators and state officials, have sought legislation that would change responsibility for conducting elections in Porter County and likely eliminate Plaintiff's position. *Id.* ¶ 16. Plaintiff alleges that this work constituted retaliation against Plaintiff. *Id.*

In the Amended Complaint, Plaintiff seeks relief in the form of a declaratory judgment that the challenged actions of the Defendants violated federal law; equitable relief requiring Defendants to compensate Plaintiff for the overtime she worked, including the statutory penalties, and future overtime; equitable relief enjoining further retaliatory against Plaintiff; compensatory damages and liquidated damages; punitive damages from the individual defendants; and costs and attorney fees. *Id.* § F.

On April 9, 2019, Defendants filed the instant Partial Motion to Dismiss [ECF No. 32], seeking dismissal of Plaintiff's § 1983 First Amendment claim. Plaintiff filed a response [ECF No. 36] on April 23, 2019, and Defendants filed a reply [ECF No. 37] on April 30, 2019.

On July 11, 2019, this matter was reassigned to the undersigned as presiding judge, and the Court subsequently held a telephonic status conference with the parties. *See* ECF Nos. 44, 45.

## LEGAL STANDARD

A motion to dismiss brought under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). The Court presumes that all well-pleaded allegations are true, views these well-pleaded allegations in the light most favorable to the plaintiff, and accepts as true all reasonable inferences that may be drawn from the allegations. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Surviving a Rule 12(b)(6) motion "requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

Defendants seek dismissal of Plaintiff's First Amendment claim brought under 42 U.S.C. § 1983, arguing that Plaintiff's speech did not address a matter of public concern but rather a purely personal grievance. Plaintiff responds that she raised the issue of whether Porter County

was violating the FLSA in order to save on personnel costs—a matter of public concern that affected her, her Republican co-worker, and potentially all Porter County employees.

To state a claim under § 1983, a plaintiff must allege "(1) that defendants deprived [her] of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).  To succeed on a claim for First Amendment retaliation, a public employee must show that "(1) [her] speech was constitutionally protected; (2) [she] has suffered a deprivation likely to deter free speech; and (3) [her] speech was at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (quoting *Massey v. Johnson*, 457 F.3d 711, 176 (7th Cir. 2016)).

"A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (citing *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016)); *see Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The failure to establish either element means "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Forgue*, 873 F.3d at 966 (quoting *Garcetti*, 547 U.S. at 418). "The determination of whether speech is constitutionally protected is a question of law." *Kubiak*, 810 F.3d at 481 (citing *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008)).

Defendants seek dismissal based on the second element, asserting that the Amended Complaint fails to plausibly suggest that Plaintiff's speech "addressed a matter of public concern." Defs.' Mem. 2, 6, ECF No. 33. A government employee's speech touches upon matters of "public concern" when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004). "Whether an employee's speech addresses a matter of

public concern must be determined by the content, form, and context of a given statement . . . ."
*Kubiak*, 810 F.3d at 482–83 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). Content
is the most important of the three factors, "but the subject matter of the speech is not
determinative." *Id.* (citing *Bivens v. Trent*, 591 F.3d 555, 560–61 (7th Cir. 2010); *Gustafson v.
Jones*, 290 F.3d 895, 907 (7th Cir. 2002)). "Purely personal grievances do not garner First
Amendment protection . . . ." *Gross v. Town of Cicero, Illinois*, 619 F.3d 697, 706 (7th Cir.
2010).

In the Amended Complaint, Plaintiff alleges three instances of protected speech:
(1) raising the issue of her overtime pay with County officials in 2016; (2) the February 12, 2018
letter; and (3) the March 13, 2018 letter. Defendants argue that the content, form, and context of
the speech fail to plausibly suggest that the objective of the speech was anything other than
furthering Plaintiff's private interests. Plaintiff counters that she was raising more than a personal
grievance because the issue of overtime affected both her and a co-worker and potentially all
Porter County employees. Plaintiff also argues that, although she had personal motives for
raising the overtime pay issue with County officials in 2016 and in 2018, the issue is
nevertheless a matter of public concern because it addresses the legality of the County's actions
and policies under the FLSA. The Court considers each of the instances of speech in turn.

First, as to Plaintiff raising "the issue of overtime pay with County officials," the
Amended Complaint is silent on the details of how Plaintiff raised the issue. Am. Compl. ¶ 11.
Therefore, the form and context are unknown. As to content, Defendants' brief characterizes
Plaintiff as having raised "the issue of *her* overtime pay." Defs.' Br. 7, ECF No. 33 (emphasis
added). Based on this characterization, Defendants argue only that the speech's "objective was
clearly to address *her* purely personal grievance of alleged unpaid wages." Defs.' Br. 7, ECF No.

33 (emphasis added). However, the Amended Complaint alleges that Plaintiff "raised *the* overtime issue with County officials," which led to discussion of the topic in several public meetings of the Porter County Council held from August to November 2016. Am. Compl. ¶ 11 (emphasis added). It was not until October 1, 2016, that Plaintiff began to be treated as an "exempt" employee and denied pay for overtime hours worked. Am. Compl. ¶ 10. It appears that Plaintiff raised the issue of overtime pay with County officials before her personal status changed from non-exempt to exempt.

Indeed, in her response brief, Plaintiff contends that she raised the question of whether the County was acting illegally (in violation of the FLSA) for the purpose of saving money on personnel costs. Pl.'s Resp. 4 (citing Am. Compl. ¶ 11). The Amended Complaint describes the discussions of the Porter County Council as referencing "County policy and the need for better policies, the legality of denying [Plaintiff] and her co-worker overtime pay, as required by the FLSA, the number of County employees treated as exempt, the role of job descriptions, and how it would be 'cheaper if we don't have to pay them overtime.'" Am. Compl. ¶ 11. Thus, the discussions were not limited solely to the issue of Plaintiff's unpaid overtime. Based on the allegations of the Amended Complaint, the objective of this speech was not simply to further a purely personal grievance. *See Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013) (emphasis added) ("[I]f an objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern."). Plaintiff raised an issue of whether the County was acting legally that affected her, her co-worker, and potentially all Porter County employees. This speech addressed a matter of public concern.

Second, as for the February 12, 2018 and March 12, 2018 letters, Defendants argue that the letters are purely personal grievances motivated by a desire to further Plaintiff's personal interests and deserving of no protection under the First Amendment. As to content, Defendants describe the letters as taking issue with the Porter County Council's legal position that Plaintiff held an FLSA exempt position, summarizing Plaintiff's claims to past due overtime pay, and inviting the County to negotiate "without litigation." Defs.' Br. 7. However, the February 12, 2018 letter also refers to the Ms. Schoon, Plaintiff's coworker who was also adversely affected by the County's overtime decisions. *See* Feb. 12, 2018 Letter, Defs.' Br. Ex. A. Neither Defendants' opening brief nor reply brief addresses the references to Ms. Schoon. The letter also gives the specific dates of the 2016 public meetings at which the Porter County Council discussed the overtime pay issue, including the background and focus on what would be "cheaper" for the County in relation to the legal requirements of the FLSA. *Id.* ¶ 3–4. The March 12, 2018 letter identified the federal regulations supporting Plaintiff's argument that the County was willing to violate the FLSA in its desire to save money. And, these letters were not Plaintiff's first speech on the issue; as discussed above, she initially raised the concern in 2016, leading to the series of discussions at the Porter County Council meetings. The references to Ms. Schoon, the legality of the County's actions, and the earlier 2016 public meetings discussing the overtime pay issue "remove [the letters] from the realm of the purely personal." *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 685 (7th Cir. 2014).

"[T]he Supreme Court noted that public employees as a class may often be the best informed on matters of public concern related to their jobs." *Meade*, 770 F.3d at 685 (7th Cir. 2014) (citing *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 571–72 (1968)). Such is the case here. Although the instant letters raise Plaintiff's personal overtime pay,

they also raise the legality of the Porter County Council's policy as well as the effect on Plaintiff's co-worker, Ms. Schoon. Again, the issue of overtime pay was publicly debated over several meetings in 2016 prior to Plaintiff sending the letters in 2018. Taxpayers as well as employees of Porter County would want to know if Porter County, as an employer, was in compliance with the FLSA and, more importantly, whether Porter County was willing to violate federal law designed to protect its employees. The issue of compliance with the FLSA on overtime pay is a subject of "legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego*, 543 U.S. at 83–84. Based on the allegations of the Amended Complaint, the content of Plaintiff's letters addresses a matter of public concern.

Turning to the form and context of this speech, Defendants are correct that both suggest a private concern. The form of the speech is private letters from Plaintiff's attorney on behalf of Plaintiff to the County's attorney and the County Council's attorney. As for the context of the speech, Defendants describe the letters as an attempt to resolve a personal dispute between Plaintiff and the County about overtime pay. Although relevant to context, "a person's motive is not dispositive in the analysis of whether a communication discusses issues of public concern." *Meade*, 770 F.3d at 685; *see also Kristofek*, 712 F.3d at 985 ("But even if Kristofek were motivated *exclusively* by his own self-interest, his First Amendment claim would not necessarily be dismissed. As we have stated before, motive alone does not conclusively determine whether a public employee's speech involves a matter of public concern.") (collecting cases); *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002) ("As a legal matter, while motive is relevant to the 'matter of public concern' inquiry, we have consistently held that it is not dispositive.").

Here, even though Plaintiff was advancing a personal interest in seeking to recover unpaid overtime, she also intended to bring to light the legality of the Porter County Council's actions regarding the FLSA, exempt employees, and overtime as it affected other employees. *See Kristofek*, 712 F.3d at 986 (explaining that speech involves a matter of public concern "if an objective of the speech was also to bring about change with public ramifications extending beyond the personal"). This is not an instance where "the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee." *Bivens*, 591 F.3d at 561 (quoting *Marshall v. Porter Cty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994)). At a minimum, the letters also addressed co-worker Ms. Schoon, and, more broadly, they raised the legality of the Porter County Council's position on the overtime pay issue. When considering all the alleged facts, beginning with the first speech in 2016 that led to the public discussions by the Porter County Council on this issue, the Amended Complaint plausibly alleges that the letters address a matter of public concern.

For these reasons, the Court concludes that the Amended Complaint plausibly suggests that the speech Plaintiff contends motivated the alleged retaliatory actions addressed a matter of public concern protected by the First Amendment. As this question was the only basis for Defendants' motion, the Rule 12(b)(6) motion is denied.

## CONCLUSION

Based upon the foregoing, the Court DENIES Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 32].

SO ORDERED on July 20, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT